**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JULIE BRANDENBURG,**

**Plaintiff,**

**v.**

**EARL L. HENDERSON TRUCKING,**
**CO., LLC, et al.,**

**Defendants.**                                          **No. 09-0558-DRH**

<u>**MEMORANDUM and ORDER**</u>

**HERNDON, Chief Judge:**

### I.  <u>Introduction</u>

Now before the Court are Defendants' motions to dismiss second amended complaint (Docs.  47 & 49). Plaintiff opposes the motion (Docs. 60, 68 & 81).  Based on the following, the Court grants in part and denies in part Defendants' motions.[1]

On December 4, 2009, Julie Brandenburg filed a Second Amended Complaint against her former employers Earl L. Henderson Trucking Co., LLC ("Henderson"), Premium Transportation Staffing, Inc. ("Premium Transportation"),

---

[1]On February 22, 2010, the Court converted Defendants Premium Enterprises, Inc. and Premium Transportation Staffing, Inc.'s motion to dismiss as to a motion for summary judgment on the following issues: 1) whether Plaintiff satisfied the Title VII requirements for filing against Premium Enterprises, Inc.; and 2) whether Premium Enterprises, Inc. and Premium Transportation Staffing, Inc. can be liable as "employers" within the meaning of Title VII. (Doc. 77).

and Premium Enterprises, Inc. ("Premium Enterprises") (Doc. 38).[2]  The Second
Amended Complaint alleges that Defendants discriminated against her based on her
gender and retaliated against her for opposing such discrimination, in violation of
Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, et seq.
(Count I) and in violation of the Illinois Human Rights Act, 775 ILCS 5-101, et seq.
(Count II).  Brandenburg claims that in late May or early June 2007, Defendants
denied her the position of Safety Director because of her gender and then assigned
her the duties of the Safety Director without pay of employees in director positions
because of her gender.  She also claims that in December 2007, Defendants
constructively discharged her from her employment.

## II.  <u>Motion to Dismiss</u>

When ruling on a motion to dismiss for failure to state a claim under
**Federal Rule of Civil Procedure 12(b)(6)**, the Court must look to the complaint to
determine whether it satisfies the threshold pleading requirements under **Federal
Rule of Civil Procedure 8.**  Rule 8 states that a complaint need only contain a "short
and plain statement of the claim showing that the pleader is entitled to relief." **Fed.
R. Civ. P. 8(a)(2)**. The Supreme Court held that Rule 8 requires a complaint to
allege "enough facts to state a claim to relief that is plausible on its face" to survive
a Rule 12(b)(6) motion.  ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007)**.  In other words, the Supreme Court explained it was "a plaintiff's obligation

---

[2]In its pleadings, Earl L. Henderson Trucking Company states that Plaintiff improperly
named it as Earl L. Henderson Trucking Co., LLC.

to provide the 'grounds' of his 'entitle[ment] to relief ' " by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ."  **Id. at 555-56 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).**  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  ***Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).**

Recently, in ***Iqbal***, the Supreme Court made clear that the federal pleading standard under **Rule 8** as discussed in its ***Twombly*** opinion applies "for all civil actions."  **Id. at ---, 129 S. Ct. at 1953**.  ***Iqbal*** identified the "two working principles" underlying the decision in ***Twombly***: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss."  **Id. at ---, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555-56)**.  In short, a court should only assume to be true a complaint's well-pleaded factual allegations, and not its mere legal conclusions, when determining whether such allegations plausibly give rise to relief. **Id. at ---, 129 S. Ct. at 1950**.

### III.  Analysis

**Count I**

First, Defendant Henderson argues that Count I should be dismissed for

lack of jurisdiction as Plaintiff did not file her complaint within ninety days of receiving the right to sue letter as required by 42 U.S.C. § 2000e-5. Henderson claims that Brandenburg did not have a valid right to sue letter prior to filing the instant action, thus, the Court should dismiss Count I. Brandenburg responds that the requirements are not jurisdictional rather the requirements are akin to conditions precedent. Further, Brandenburg argues that she cured any defect when she filed her First Amended Complaint after the EEOC issued the second notice of right to sue.

The Seventh Circuit has held that the requirement that a plaintiff have filed EEOC charges before suit is not intended to erect an elaborate pleading requirement or to allow form to prevail over substance. **Cable v. Ivy Tech State College, 200 F.3d 467, 477 (7th Cir. 1999)**. The Supreme Court has also observed more generally that procedural technicalities should not be used to bar a Title VII claim. **Zipes v. Trans World Airlines, 455 U.S. 385, 397-98 (1982)**. Thus, dismissal is not warranted if it appears otherwise that the required conditions were fulfilled.

Here, Henderson does not claim to have been prejudiced by the failure of the notice of right to sue at the time the suit was originally filed. Because it appears that Brandenburg did fulfill her condition precedent, the Court finds that dismissal on this ground is not proper. Thus, the Court denies the motion based on this argument.

Next all three Defendants move to dismiss Count I arguing that Brandenburg failed to allege sufficient facts to support a claim of constructive discharge. Specifically, Defendants argue that Brandenburg does not allege that her working conditions were so intolerable that a reasonable person in her position would have be compelled to resign, nor has she alleged that her work environment was hostile. Brandenburg contends that she has alleged sufficient facts to support a claim of constructive discharge.

Constructive discharge occurs when a plaintiff shows that he was forced to resign because his working conditions, from the standpoint of a reasonable employee, had become unbearable. ***Fischer v. Avande, Inc.*** **519 F.3d 393, 408-09 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Univ. of Chicago Hosps.,* 276 F.3d 326, 331 (7th Cir. 2002))**. Constructive discharge can take two different forms. ***Id.* at 409**. Under the first approach, the plaintiff must demonstrate a discriminatory work environment even more egregious than the high standard for a hostile work environment. ***Id.*** Under the second approach, when an employer acts in a manner that communicates to a reasonable employee that he will be terminated, and then the plaintiff resigns, the employer's conduct may amount to a constructive discharge. ***Id.*** With the second approach, a constructive discharge also occurs if, based on the employer's actions, the handwriting was on the wall and the axe was about to fall. ***Id.***

Brandenburg alleges that Defendants denied her the position of Safety

Director because of her gender yet required her to perform the duties of Safety Director without paying her for performing the duties of Safety Director. She also alleges that she repeatedly protested about the discrimination to no avail. Based on the allegations and the exhibits to the Second Amended Complaint, the Court finds that Brandenburg has stated sufficient facts to support a claim of constructive discharge.[3] Therefore, the Court denies Defendants' motion as to this issue.

Defendants also contend that Brandenburg failed to state a cause of action for emotional distress. Brandenburg counters that she did not sue Defendants for a claim of emotional distress, but that she has suffered emotional distress and is seeking compensatory damages as relief for her emotional distress under Title VII. The Court agrees with Brandenburg. In ¶ 13 and the Wherefore clause, Brandenburg's Second Amended Complaint states: "As a direct and proximate result of defendants' conduct, plaintiff had been damaged in that she has lost wages and other benefits of employment and she has suffered emotional distress, embarrassment, humiliation and loss of enjoyment of life. WHEREFORE, plaintiff asks for judgment in her favor and against defendants in an amount to be established at trial for backpay, compensatory and punitive damages, ..." Clearly, this is not a separate claim for intentional infliction of emotional distress. Further, compensatory damages are available as a remedy under Title VII. **42 U.S.C. §**

---

[3]In her Charge of Discrimination Brandenburg states: "I complained to Mike Reagan (Operations Manager) that I believed I was not getting jobs and higher pay because I was a woman. Reagan acknowledged that Respondents discriminated against women, stating, 'If you don't have a nice ass and huge tits, you're never going to get a raise at Henderson Trucking.'" (Doc. 38; Exhibit 1, p. 2).

1981a.  *See e.g., Lust v. Sealy*, 383 F.3d 580, 589 (7th Cir. 2004); *EEOC v. AIC Investigations, Ltd.*, 55 F.3d 1276, 1286-1287 (7th Cir. 1995).  Thus, the Court denies Defendants' motion as to emotional distress.

Defendants also argue that Brandenburg failed to state sufficient facts to support a claim of retaliation.  Defendants maintain that Brandenburg failed to allege that she was engaged in a statutorily protected activity, that she suffered an adverse employment action or that there was a causal link between any protected activity and an adverse action.  Brandenburg asserts that she did state a claim for retaliation.

Employers are prohibited from punishing employees for complaining about discrimination or other practices that violate Title VII.  A cognizable claim for retaliation must demonstrate that the plaintiff engaged in protected activity, that an adverse employment action occurred, and that the adverse employment action was caused by the protected activity. **See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.")**.

At this stage in the litigation, Brandenburg's Second Amended Complaint contains sufficient facts to support a claim of retaliation.  She alleges that she was discriminated because of her gender, that she protested about Defendants'

discrimination against her, and that she was constructively discharge. This qualifies as protected activity. ***See Kodl v. Board of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007)(citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006))("the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of … harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.")**. Further, constructive discharge is a cognizable form of unlawful retaliation. ***See Fischer*, 519 F.3d at 408-409**. Thus, the Court denies Defendants' motion to dismiss Brandenburg's retaliation claim.

Next, Defendants argue that Brandenburg failed to allege sufficient facts to support a claim for punitive damages. Defendants contend that Brandenburg failed to establish in her Second Amended Complaint that the employees who allegedly discriminated against her were managerial agents acting within the scope of their employment.

Title VII plaintiff is entitled to punitive damages if her employer engages in discriminatory practices "with malice or with reckless indifference to [her] federally protected rights." **42 U.S.C. § 1981a(b)(1)**. "Malice" or "reckless indifference" do not require "a showing of egregious or outrageous" conduct, but rather proof that the employer acted "in the face of a perceived risk that its actions [would] violate federal law." ***Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36,**

**119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)**.

Based on the allegations contained in Brandenburg's Second Amended Complaint and the exhibits attached to her complaint, the Court finds that Brandenburg pled sufficient facts to allow her to pursue punitive damages.  It is too early in the litigation to determine whether the conduct Brandenburg complains of rises to the level that would entitle her to punitive damages.  Thus, the Court denies Defendants' request to strike Plaintiff's request for punitive damages.

**Count II**

In their motion, Defendants Premium Enterprises and Premium Transportation argue that they should be dismissed from Count II as Brandenburg did not name them as Defendants until more than ninety days after she received a Notice of Right to Commence a Civil Action under the IHRA.  These Defendants cite no case law to support this contention.[4]  Brandenburg responds that the Second Amended Complaint relates back to the date of the her original pleading in that Premium Enterprises received notice of this action; that Defendants do not dispute that she sued Premium Transportation during the ninety day window under the

---

[4]They maintain that under 775 ILCS 5/7-113(D)(3) Brandenburg had ninety days to commence a civil action.  The Court notes that 775 ILCS 5/7-113, does not contain any subsections, is not the correct statute and states: "Employer report form; registration fee.  When a person files and 'Employer Report Form' (PC-1) with the Department as specified in subsection (J) of Section 2-101 to establish eligibility to be awarded a contract by a State agency, the person must pay a $75 registration fee.  These fees shall be paid into the Department of Human Rights Special Fund, a special fund that is created in the State treasury.  Notwithstanding any other law to the contrary, the Fund is not subject to administrative charges or charge-backs.  Moneys in the Fund shall be used solely to fund the Department's public contract compliance monitoring program and other Department programs and activities."

IHRA; that Premium Enterprises had actual notice of this lawsuit from the onset and participated in the defense before becoming a party; and that Premium Transportation has repeatedly represented to the Court that it is really Premium Enterprises.

Despite Defendants' failure to cite the applicable statute or case law, the Court finds that Brandenburg's failure to timely file her IHRA claim within the ninety days is fatal to her claim.  The applicable statute, 775 ILCS 5/7A-102(C)(4), states in part that: "If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice." **775 ILCS 5/7A-102(C)(4).**[5] On February 9, 2009, the IDHR issued its Notice of Dismissal and informed her that she had ninety days to bring the lawsuit.  On December 4, 2009, Brandenburg filed her Second Amended Complaint adding Premium Enterprises and Premium Transportation as Defendants to Count II, the IHRA claim.   Clearly, she did not bring her IHRA claim against these Defendants  within the ninety day period.  Thus, the Court grants Defendants' motion to dismiss.  The Court **DISMISSES as untimely** the IHRA claim in Count II against Premium Transportation and Premium Enterprises.

Next, Henderson argues that Count II should be dismissed as Illinois law does not recognize constructive discharge as an actionable claim.   Brandenburg

---

[5]Title VII contains a similar provision that a plaintiff must file an action within 90 days of receiving a right-to-sue letter.  **42 U.S.C. § 2000e-5(f)(1);** *See also Irwin v. Dep't of Veterans Affairs*, **498 U.S. 89. 96 (1990);** *Velasco v. Illinois Department of Human Services*, **246 F.3d 1010, 1018 (7th Cir. 2001).**

asserts that the Illinois Human Rights Act does provide relief for constructive discharge. Brandenburg is correct.

Here, Brandenburg's Second Amended Complaint does not allege a claim for common law retaliatory discharge as Defendants assert. Instead, her Second Amended Complaint alleges that Defendants constructively discharged her in violation of IHRA. The IHRA encompasses claims for constructive discharge. ***See Raintree Health Care Center v. Illinois Human Rights Comm'n*, 672 N.E.2d 1136 (Ill. 1996); *Board of Directors, Green Hills Country Club v. Illinois Human Rights Comm'n*, 514 N.E.2d 1227 (Ill. App. 1987)**. Thus, the Court denies the motion as to this issue.

Also as to Count II, Henderson contends that Brandenburg failed to state a cause of action for intentional infliction of emotional distress. Brandenburg counters that she did not allege a claim of intentional emotional distress rather she is seeking damages for emotional distress as a form of her damages under the IHRA. A review of Brandenburg's Second Amended Complaint and the case law reveal that Brandenburg is correct. If successful on this claim, Brandenburg is entitled to damages for emotional distress under the IHRA. ***See* 775 ILCS 5/8-111(A)(4); 775 ILCS 5/8A-104; *Village of Bellwood Bd. of Fire and Police Comm'rs v. Human Rights Comm'n*, 514 N.E.2d 1248, 1258 (Ill. App. 1989)**. Therefore, the Court denies the motion on this basis as well.

Also under Count II, Henderson maintain that Brandenburg failed to

state a claim for retaliation under the IHRA.  The IHRA is the exclusive remedy for the redress of civil rights violations under Illinois law. **775 ILCS 5/8-111(D)**.  The Act states that it is a civil rights violation to "retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment ... or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." **775 ILCS 5/6-101(A)**.

In her Second Amended Complaint, Brandenburg alleges that Defendants retaliated against her because she "protested the discrimination against her in further of her rights under the IHRA."  Under the plain language of the Act, this  conduct qualifies as a civil rights violation and she has stated a cause of action for retaliation under the IHRA.  The Court denies the motion on this issue.

Additionally, Henderson argues that Brandenburg's claim under the IHRA for failure to promote is untimely.  Specifically, Henderson maintains that under the IHRA the charge of discrimination must be filed within 180 days after the date that a civil rights violation was committed.  In response, Brandenburg concedes that her February 2008 charge was not timely to incorporate the May 2007 failure to promote under the IHRA.  Accordingly, the Court grants the motion as to her May 2007 failure to promote claim.

Lastly, Henderson asserts that Brandenburg's constructive discharge claim is untimely.  It argues that the February 2008 charge of discrimination was deficient in that it did not contain any allegations of constructive discharge and that

she did not file her perfected charge containing allegations of constructive discharge until September 3, 2008 well past the 180 day time frame.  Brandenburg responds that she has alleged sufficient facts to demonstrate that her claims are timely in that she alleges that she filed the original charge in February 2008 within the 180 day time frame.  Brandenburg maintains that her original charge was separated into two charges and that these charges are attached to her Second Amended Complaint.  The Court agrees with Brandenburg that she has alleged sufficient facts to establish that her claims are timely.  The Court denies this portion of the motion to dismiss.

### IV.  <u>Summary Judgment</u>

Next, the Court turns to address the two issues contained in the motion to dismiss that were converted to a motion for summary judgment: 1) whether Plaintiff satisfied the Title VII requirements for filing against Premium Enterprises, Inc.; and 2) whether Premium Enterprises, Inc. and Premium Transportation Staffing, Inc. can be liable as "employers" within the meaning of Title VII.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  **Fed. R. Civ. Proc. 56(c)**.  A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant.  ***Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994)**.  The movant in a motion for summary judgment

bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. **Fed. R. Civ. Proc. 56(e)**; *Celotex Corp. v. Catrett,* **477 U.S. 317, 325 (1986)**. In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986)**.

## V.  Analysis

First, Premium Enterprises argues that Count I should be dismissed against it as Brandenburg did not name it in her charge of discrimination. Further, Premium Enterprises merely argues that it did not have actual notice or the opportunity to participate on its own behalf in conciliation or the investigation. Brandenburg counters that Premium Enterprises had adequate notice as it and Premium Transportation are the same entity.

Generally, a party must be named as a respondent in the EEOC charge in order to be subject to suit. *Tamayo v. Blagojevich,* **526 F.3d 1074, 1089 (7th Cir. 2008)**. A party not named in the charge may be sued, however, if it had notice of the charge and an opportunity to participate in conciliation. *Id.; see also, Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* **U.A., 657 F.2d 890, 906 (7th Cir. 1981)**.

The Court gleans the following from the record. Premium Enterprises

first learned that Brandenburg filed charges with the IDHR when, Todd Packard, the CEO of Premium Enterprises, received the complaint in March 2008 (Doc. 81-4, p. 2).   In addition, Premium Enterprises, through its vice president, John Willett, attended the fact finding conference. (Doc. 81-4, ps. 2-3).  Premium Enterprises also prepared a position statement to the IDHR on behalf of Premium Transportation. (Doc. 81-4. p. 3).  Premium Transportation told the IDHR that it was Premium Enterprises' successor stating: "Premium Transportation Staffing ... is the successor to  Premium  Enterprises,  Inc.  ..."    (Doc.  81-1,  p.  4).    Further,  Premium Transportation told the IDHR that in 2004 it entered into an agreement with Henderson to supply leased employees.  (Exhibit 81-1, p. 4).  This agreement reveals that it is actually between Premium Enterprises and Henderson and not Premium Transportation and Henderson. (Exhibit 81-2 p. 2).  Further, Mr. Packard testified: "Well, I'm the president and CEO of both entities and quite honestly, our response all along was in reference to Premium Enterprises and basically wanted to cut to the chase and answer in the appropriate party." (Doc. 81-4, p. 4).  Based on the record before the Court, the Court concludes that a fact finder could reasonably ascertain that Premium Enterprises had notice of the charge that Brandenburg filed against Premium Transportation.

As to the conciliation process the Court agrees with Brandenburg.  The EEOC did not make a "reasonable cause" finding in this case, thus there was no conciliation for anyone.  However, under the circumstances, the Court concludes that a fact finder could also reasonably ascertain that Premium Enterprises would have

participated.  Therefore, the Court denies the motion for summary judgment on this issue.

Next, both Premium Enterprises and Premium Transportation argue that there is no genuine issue of material fact to dispute that they were not Brandenburg's employers under Title VII.

In general, an employee can only bring a Title VII claim against the employee's employer.  **See 42 U.S.C. § 2000e-2(a)**.  Under Title VII, an employee is defined as "an individual employed by an employer." **42 U.S.C. § 2000e(f)**.  To determine whether a plaintiff was an employee of the defendant employer, the Seventh Circuit employs a five-factor test based on common-law principles of agency. ***Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) (citing *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1997))**.  The test requires courts to consider the following factors: (1) the extent of the employer's control and supervision over the worker; (2) the kind of occupation and nature of skill required; (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace; (4) the source of payment and benefits; and (5) the duration of the job. ***Id.* at 550**. Of the five factors, the extent of control and supervision over the worker is considered the most significant when determining employment status.  ***Id.***

The Seventh Circuit has held that multiple entities may be considered an employee's "employer" for the purposes of Title VII liability. ***Tamayo v.***

***Blagojevich*, 526 F.3d at 1088 (citing *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001)) (noting that "any of the Affiliates that possibly maintained an employment relationship with Worth may be named as a defendant under Title VII").** " The Seventh Circuit no longer applies the "integrated enterprise" test in Title VII cases. Instead, the Seventh Circuit found three ways in which certain affiliated corporate entities can be considered proper Title VII defendants. ***Worth*, 276 F.3d at 259**. First, any of the entities that maintained an employment relationship with the plaintiff could be named as a defendant under Title VII. ***Id.* (citation omitted)**. Second, any of the entities found to have forfeited its limited liability could be considered a proper Title VII defendant. ***Id.* (citation omitted)**. The third way to find that affiliated corporate entities are proper Title VII defendants is when an entity is found to have succeeded its predecessors liability. ***Id.* at 260 (citation omitted)**.

Premium Enterprises and Premium Transportation argue that summary judgment should be granted in their favor as Brandenburg failed to prove that either of them was her employer. In support, they refer to the IDHR's finding that Premium Transportation was merely a payroll company and not an employer. Further, they maintain that neither of them are located in Illinois; that Brandenburg failed to allege that Premium Transportation had any degree of control and that Brandenburg failed to establish that there was a joint employment relationship with Henderson. They maintain that the only evidence that Brandenburg has is the agreement between Henderson and Premium Enterprises in which Premium Enterprises agrees to

supply over the road drivers and mechanics, as well as copies of her payroll information which bears Premium Enterprises name.  Brandenburg counters that her W-2's reveal Premium Enterprises as her employer, that Premium Enterprises had possession of her employment records and answered a request from Brandenburg to provide her with them; and that the individuals that were involved in the alleged conduct that she complains of were employees of Premium Enterprises.

Clearly, based on the record and arguments presented by the parties, the Court finds that there are material fact questions as to whether Brandenburg was employed by either of these Defendants.  As stated earlier, Premium Transportation, in its position statement, admitted that it entered into a contract to provide Henderson with leased employees.  Throughout that contract, the parties recognize that the employees were Premium Enterprises.  Further, that contract states that Premium Enterprises will pay its employees' wages, provide all fringe benefits and have the sole and exclusive control over the hiring, firing and training of the employees that it furnishes.  (Doc. 81-2, ps. 3).   In addition, Brandenburg's W-2's from 2006 & 2007 identify her employer as Premium Enterprises.  (Doc. 81-1, ps. 1-4).  Premium Enterprises provided Brandenburg with her personnel records. (Doc. 81-1, p. 9).  Employees Bill Beaty, Mike Thompson and Keith Kruckenburg were hired by Henderson (like Brandenburg) and were added to Premium Enterprises' payroll in September 2004 and were counted as leased employees from 2004 through 2007. (Doc. 81-5).   Thus, the Court denies the motion for summary

judgment on this issue.

## VI.   <u>Conclusion</u>

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' motions to dismiss (Docs. 47 & 49).  The motions are granted as to her May 2007 failure to promote claim in Count II and as to the claims contained in Count II against Defendants Premium Transportation and Premium Trucking.

**IT IS SO ORDERED.**

Signed this 2nd day of June, 2010.

/s/    David R Herndon

**Chief Judge**
**United States District Court**