# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JULIE BRANDENBURG,**

**Plaintiff,**

**v.**

**EARL L. HENDERSON TRUCKING,
CO., LLC., and PREMIUM TRANSPORTATION
STAFFING, INC. and PREMIUM ENTERPRISES,
INC.,**

**Defendants.**                                      **No. 09-0558-DRH**

## <u>MEMORANDUM and ORDER</u>

**HERNDON, Chief Judge:**

## I.  <u>Introduction and Background</u>

Now before the Court are several motions for summary judgment filed by the parties: (1) Brandenburg's motion for partial summary judgment (Doc. 107); (2) Premium Transportation Staffing, Inc., and Premium Enterprises, Inc.'s second motion for summary judgment (Doc. 115) and (3) Earl L. Henderson Trucking Co.'s motion for summary judgment (Doc. 117). Based on the applicable law and the following, the Court denies the motions.

On December 4, 2009, Julie Brandenburg filed a Second Amended Complaint against her former employers Earl L. Henderson Trucking Co., LLC ("Henderson"), Premium Transportation Staffing, Inc. ("Premium Transportation"), and Premium Enterprises, Inc. ("Premium Enterprises") (Doc. 38). The Second Amended Complaint alleges that defendants discriminated against her because of her gender,

that plaintiff protested the discrimination and that she was constructively discharged in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, et seq. (Count I) and in violation of the Illinois Human Rights Act, 775 ILCS 5-101, et seq. (Count II). Brandenburg's Second Amended Complaint alleges that in late May or early June 2007, defendants denied her the position of Safety Director because of her gender and then assigned her the duties of the Safety Director without the pay of employees in director positions because of her gender. She also claims that in December 2007, defendants constructively discharged her from her employment.

On June 2, 2010, the Court entered an Order granting in part and denying in part the defendants' motions to dismiss (Doc. 88).[1] The Court granted the motion as to her May 2007 failure to promote claim in Count II and as to the claims contained in Count II against Premium Transportation and Premium Trucking. Thereafter, the parties filed the pending motions for summary judgment.

## II. <u>Undisputed Facts</u>[2]

John Kaburick is the owner and CEO of Henderson Trucking and his son, Josh Kaburick, is the COO. In 1999, plaintiff began working for Henderson Trucking as an over-the-road driver. In 2003, she moved to the office and worked in the Safety Department as the Log Clerk, then as the Cargo Claims Clerk and then as Assistant

---

[1]Prior to ruling on defendants' motions to dismiss, the Court converted portions of defendants Premium Transportation and Premium Enterprises's motion to dismiss regarding whether these defendants were plaintiff's employers and whether plaintiff satisfied the Title VII requirements for filing against Premium Enterprises.

[2]The Court has carefully reviewed the parties' recitations of the facts. The Court has attempted to limit its discussion of the facts to those facts which are material to the issues in this case based upon the applicable law and not in dispute.

Safety Director in 2004.

Until May 24, 2007, Keith Kruckenberg held the position of Safety Director and he was in charge of the Safety Department. In 2004, Josh Kaburick had plaintiff and other women come in the office over the weekend and help Kruckenberg with his workload. During this time frame, Henderson Trucking changed Brandenburg's title to Assistant Safety Director. Her job was to assist Kruckenberg by helping him catch up with his work and become efficient.

On May 24, 2007, Kruckenberg was fired and the position of Safety Director was eliminated. As a result, Bill Beatty, Director of Recruiting, was promoted to Vice President of Safety and Recruiting. Beatty oversaw the Safety Department and the Recruiting Department. Beatty also took over the duties of the Safety Director. Beatty had never worked in the Safety Department and did not know how to perform the job. During this time, plaintiff was given additional job duties to help Beatty run the Safety Department. She also was given the additional duties of the Claims Clerk because the person who held that position was not fully trained in June 2007 and quit the job in October 2007.

In June 2007, plaintiff's pay rate was $12.30. She did not receive a raise for her new responsibilities at that time. In November 2007, her pay rate increased to $13.00 an hour. Also in June 2007, Henderson Trucking promoted Mike Thompson, head of Lease Operations, to Beatty's former position.

Throughout her employment with Henderson Tucking, Brandenburg received two raises in 2004, one raise in 2005, two raises in 2006 and one raise in 2007.

From 2003 to 2007, her pay range went from $7.50 an hour to $13.00 an hour. When Kruckenberg was Safety Director his pay was $25.43 an hour. Kruckenberg's predecessor, Bob Coffey's pay was $24.56 an hour. Mike Thompson's pay increased from $22.10 an hour to $24.04 an hour with his promotion. Beatty's pay was $29.72 an hour.

On December 13, 2007, Brandenburg sent another employee at Henderson Trucking an in-house message inquiring about whether Steve Mulvaney makes more money than Debbie Smith. The next day, Beatty sent plaintiff an email asking her why she was inquiring about other employee's salaries. In response, Brandenburg stated that she was curious and that she was quitting. That morning, Brandenburg quit her job at Henderson Trucking. That same day after she quit, plaintiff sent an email to Josh Kaburick stating: "I would be willing to stay with Earl L. Henderson Trucking if there was an offer to fairly raise my salary to the salary of someone in an equal position and equivalent duties. As per the duties I am performing, I feel that my position deserves a promotion."

### III. <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994). The

movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The Court recognizes that "summary judgment is frequently inappropriate in discrimination cases because intent, and therefore credibility, is often a crucial issue." *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir. 1989). While the Court approaches the question of summary judgment with "special caution" in discrimination cases, "if a plaintiff in a discrimination case is unable to present any evidence to create a genuine issue as to whether the defendant's articulated reason for the firing is the real reason, then summary judgment will be appropriate." *Id.* at 188-89; *see also Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988).

## IV. <u>Analysis</u>[3]

First, the Court addresses plaintiff's motion for partial summary judgment. Specifically, plaintiff moves for summary judgment as to defendants' respective

---

[3]As stated previously, Brandenburg brings claims under both Title VII and the IHRA. As the Illinois law utilizes the same standards as the Seventh Circuit in analyzing these types of claims, the Court will cite to pertinent Seventh Circuit cases. *See Freeman United Coal Mining Co. v. Human Rights Com'n.*, 173 Ill. App. 3d 965, 973 (Ill. App. 1988); *Taylor Co. v. Saari*, 308 Ill. App. 3d 242, 245 (Ill. App. 1999); *Board of Regents for Regency Universities v. Human Rights Com'n*, 196 Ill. App. 3d 187, 195 (Ill. App. 1990).

affirmative defenses of failure to mitigate.  Plaintiff contends that defendants have produced no evidence that there were jobs comparable to the job of Assistant Safety Director that plaintiff held which plaintiff failed to find or accept.  Defendants contend that issues of material fact exist and that this is a question for the jury to resolve.  Specifically, defendants contend that plaintiff was not reasonable in her job search and therefore she did not attempt to find comparable employment.  Based on the record, the Court agrees with defendants that there are issues of fact regarding mitigation.

The general test of whether a plaintiff has failed to mitigate damages is two-pronged: the defendant must show that (1) the plaintiff failed to exercise reasonable diligence to mitigate her damages; and (2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence. *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir.1989); *United States v. City of Chicago*, 853 F.2d 572, 578 (7th Cir.1988); *Hutchison v. Amateur Electronic Supply, Inc.* 42 F.3d 1037, 1044 (7th Cir.1994). The plaintiff's burden to mitigate damages does not require success, but only an honest, good faith effort to locate comparable employment. *See E.E.O.C. v. Ilona of Hungary, Inc.*, 97 F.3d 204, 216 (7th Cir.1996); *Smith*, 969 F.2d at 438-439.

Here, the Court finds that there are issues of fact as to the mitigation issue. Plaintiff testified that she did not apply for any jobs at truck driving companies; that she applied for less than ten driving jobs and that she applied for only two managerial positions.  In her search for a new job, plaintiff responded to job listings

posted on internet job sites and/or printed in local newspapers. According to her job search log, plaintiff searched for employment from January 2008 to December 2009. During this time, plaintiff also took time off from the job search to enjoy time with her children. Further, that she testified that she did not always follow-up with companies after sending her resume. Plaintiff stated that she did not utilize a headhunter; subscribe to any internet posting sites and did not apply to any temporary agencies or job placement agencies. She further stated that she did not use a vocational rehabilitation specialist. Clearly, there are questions of fact as to whether plaintiff's attempt to find comparable employment was reasonable.

Before addressing the merits of defendants' motions for summary judgment, the Court must resolve Henderson's motion to strike portions of plaintiff's memorandum in opposition to Earl L. Henderson's motion for summary judgment (Doc. 129). Henderson contends that both plaintiff's memorandum and exhibits contains several inadmissable hearsay statements. Specifically, Henderson moves to strike statements from Brian Mixon, Beatty, an executive administrative assistant, Debbie Smith and Letha McIntosh contained in paragraphs 9, 13, 14 and 17 of Brandenburg's declaration. Henderson also moves to strike as hearsay statements made by Mike Reagan and Kruckenberg and an unknown dispatcher that are contained Brandenburg's answers to interrogatories number 10. Henderson contends that none of these people are/were decision makers at Henderson and that none of these people had the authority or knowledge of the decision-making progress with regard to hiring or pay, thus, the statements are inadmissable. Plaintiff counters

that the challenged statements are admissible.  The Court agrees with Brandenburg.

> "Under Rule 801(d)(2)(D), '[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....' *United States v. Swan*, 486 F.3d 260, 264-65 (7th Cir. 2007)(citing Fed.R.Evid. 801(d)).  This Rule 'simply requires that the statement be made by an individual who is an agent, that the statement be made during the period of the agency, and that the matter be within the subject matter of the agency.' *Young*, 327 F.3d at 622."

*Mister v. Northeast Ill. Commuter R.R. Corp.*, 571 F.3d 696, 698 (7th Cir. 2009).

Furthermore, statements to show state of mind are admissible under Rule 803(3).

*Luckie v. Ameritech Corp.*, 389 F.3d 708, 716 (7th Cir. 2004).  Rule 803(3) provides:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

As to the alleged statements of Beatty, the Court finds that they are admissible.

In paragraph 9 of her declaration, Brandenburg claims that the following regarding her pay increase took place:

> "I then told Bill Beatty that I was trying to speak with Kaburick about my pay increase.  Bill said he didn't think that would be a good idea; he said 'let me do the talking for you, it would go better for you that way.'" Further, in paragraph 13 of plaintiff's declaration, Brandenburg states that after a multi-car accident in California, the dispatcher, Debbie Smith told Beatty about the accident and that the driver was on the phone and that Bradenburg told Smith to 'Go find Julie.'"

Brandenburg further declares that Beatty told her that he was not sure what happened but that she should get the details.

Here, Beatty was plaintiff's supervisor and was clearly instructing plaintiff how to handle different aspects of their employment. The Court finds that these statements are admissible under Rule 801(d)(2)(D). Also, these statements tend to show plaintiff's state of mind with regard to events leading to her constructive discharge.

As to statements made by Mixon, plaintiff contends that she did not assert that Mixon made any statements in paragraphs 9, 13 and 14. A review of the declaration indicates that Brandenburg is correct that these paragraphs do not contain any statements made by Mixon.

Next, Henderson challenges as hearsay statements made by the executive administrative assistant in paragraph 14. In this paragraph, Brandenburg states that the assistant told her the wages of Beatty, Thompson and Kruckenberg. Here, Brandenburg's recital of the assistant's statement regarding wages can be used as state of mind evidence to demonstrate whether plaintiff reasonably believed that she had to resign. *See E.E.O.C. v. University of Chicago Hospitals,* 276 F.3d 326, 333 (7th Cir. 2002). Thus, this statement is not considered hearsay under Rule 803(3).

Henderson also moves to strike statements made by Debbie Smith and Letha McIntosh contained in paragraph 17 of Brandenburg's declaration. The statements are as follows:

"Smith said, 'why didn't you take the Safety Director job anyway?' I said,

'I was never asked.' Smith said, 'Really?' and pointed to a labor law poster above the copy machine that said something about equal pay (regardless of sex). As she was pointing, Smith said, 'That don't mean crap around here. There's a male Dispatcher that has less drivers and less seniority than *I* do and I'm sure he's making more money.' ... I went back to my desk and asked Letha (Executive Administrative Assistant), via inhouse messaging, 'does Steve make more than Debbie?' Letha did not respond via inhouse messaging; instead Letha walked up to my desk and set down a post-it note that said: Steve $16.– Debbie $14.– .... As she set the post-it note down, Letha said, 'What do you think about that?'"

These statements are not hearsay in that they are not offered for the truth of the matters asserted. Instead these statements are admissible under 803(3) to establish Brandenburg's state of mind to demonstrate whether plaintiff reasonably believed that she had to resign.

Next, Henderson moves to strike Reagan's statements contained in plaintiff's answers to interrogatory 10 as hearsay. In this answer, plaintiff states:

"Plaintiff told Mike Reagan that she believed she was not getting jobs and higher pay because she was a woman. Reagan acknowledged that Henderson discriminates against women, and said, 'If you don't have a nice ass and huge tits, you're never going to get a raise at Henderson Trucking.' As best as plaintiff can recall, he said, 'I have been here a long time and it was going on years ago when my ex-wife worked here. Julie, I see this crap happen every day in my department to Lisa Brubaker and Lori Meyer. They will hire a man off the street with no experience whatsoever and pay them more than they are paying Lisa or Lori. Lisa has the capability to sit in any position in operations and do it well, this Matt guy they hired is something great in their eyes, but all he does is sit and stare at his cubicle walls eight hours a day. They hired Matt Davis in making more money than Lisa and she has to train him. Josh was all gung ho on this guy because he has a degree and he is 'High Energy' yet he has no experience. It makes no sense to me, but what are you gonna do? It's their baby!'"

Reagan's job was Operations Manager and he reported directly to the COO, Josh

Kaburick. His job was on the same organizational plane as a Vice President and Executive Vice President. Reagan's statements about what he observed in his supervision as Operations Manager are not hearsay under Rule 801(d)(2)(D). Further, the statements are also admissible under Rule 803(3) as Brandenburg's recital of the Reagan's statements regarding discrimination can be used as state of mind evidence to demonstrate whether plaintiff reasonably believed that she had to resign.

Lastly, Henderson moves to strike as hearsay statements made by Kruckenberg and Leon Thurman's statements that John Kaburick did not want any more female dispatchers. The Court agrees with plaintiff that these statements are not hearsay. These employees reported to plaintiff events from a business meeting that they attended and Kruckenberg was plaintiff's supervisor at that time. Accordingly, the Court denies the motion to strike (Doc. 129).

The Court now turns to address defendants' motions for summary judgment. Defendants maintain that plaintiff cannot establish a prima facie case of sex discrimination. Specifically, defendants maintain that she cannot establish that she suffered an adverse employment action or that someone similarly situated as her was treated different. Further, defendants argue that plaintiff has offered no direct proof of retaliation and that plaintiff was not constructively discharged. Plaintiff counters that she has direct evidence of sex discrimination, that she can establish a prima facie case of retaliation and constructive discharge. Plaintiff also counters that she can establish a prima facice case of sex discrimination and direct proof of retaliation.

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). One type of sex discrimination claim involves disparate treatment based on gender. "Proof of intentional discrimination is required" for a disparate treatment claim. *Hildebrandt v. Illinois Department of Natural Resources,* 347 F.3d 1014, 1029 (7th Cir. 2003).

In Title VII disparate treatment cases and in retaliation cases, a plaintiff may show discrimination under either the "direct" or the "indirect" method of proof. *Brown v. Illinois Department of Natural Resources,* 499 F.3d 675, 681 (7th Cir. 2007); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640 (7th Cir. 2002). The direct method of proof involves admissions by the employer, near-admissions by the employer, and more attenuated circumstantial evidence that "suggests discrimination through a longer chain of inferences." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). By contrast, the indirect method of proof involves a "certain subset of circumstantial evidence that includes how the employer treats similarly situated employees and conforms to the prescription of *McDonnell Douglas Corp. v. Green." Faas*, 532 F.3d at 641.[4]

---

[4]"The rubric of the indirect method was first set forth in *McDonnell Douglas Corp. v. Green....* Under this methodology, [the plaintiff] may create a presumption of discrimination by establishing a prima facie case of discrimination." *Atanus v. Perry,* 520 F.3d 662, 672 (7th Cir. 2008)( citing *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997)).

The United States Court of Appeals for the Seventh Circuit has been critical of this nomenclature, because the phrase "direct method" erroneously implies that an employee must proceed with direct evidence. *See Faas*, 532 F.3d at 641, and *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006) (the distinction between the two avenues of proof is "vague," and the terms "direct" and "indirect" are themselves "somewhat misleading...."). The Seventh Circuit has explained:

> "Direct" proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion ( *e.g.*, "You're too old to work here."), but also *includes circumstantial evidence* which suggests discrimination through a longer chain of inferences."... The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action.

*Atanus*, 502 F.3d at 671-72, *citing Luks*, 467 at 1052, and *quoting Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902-03 (7th Cir. 2006). "Direct evidence is evidence which, if believed by the trier of fact, will prove a particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)(quoting *Rudin v. Linclon Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)).

Under *McDonnell Douglas*, a plaintiff must first make out a prima facie case of gender discrimination. Brandenburg may do so by showing: (1) she is a member of the protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated male employees more favorably. *Peirick v. Indiana-Purdue University*

*Indianapolis Athlethics Dept.,* 510 F.3d 681, 687 (7th Cir. 2007); *Ptasznik v. St. Joseph Hospital,* 464 F.3d 691, 696 (7th Cir. 2006). If Brandenburg succeeds, then defendants may rebut the prima facie showing by proffering a legitimate, nondiscriminatory reason for the adverse employment action. *Atanus*, 520 F.3d at 672. If the defendants bear this burden of production, then the plaintiff must prove that the defendant's proffered reason is "'false and only a pretext for discrimination.'" *Id.* (quoting *Bahl*, 115 F.3dat 1290. "The main inquiry in determining pretext is whether the reason for the [adverse employment action] was a correct business judgment." *Id.* at 674 (internal quotation marks omitted). If the plaintiff fails to rebut the "noninvidious reason for the adverse action, [then the defendant] is entitled to summary judgment. Otherwise there must be a trial." *Stone,* 281 F.3d at 644; accord *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) ("If [the employer's proffered reason] is the true ground and not a pretext, the case is over.").

Based on the briefs submitted by the parties, the Court will address Brandenburg's claims under the indirect method. Here, the parties do not dispute that Brandenburg was a member of a protected class (female) or that she met her employer's legitimate expectations. However, the parties disagree as to the other two elements.

First, defendants argue that Brandenburg failed to establish that she suffered an adverse employment action. Adverse employment actions include items such as hiring, denial of promotion, reassignment to a position with significantly different job responsibilities or an action that causes a substantial change in benefits. *Herrnreiter*

*v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002). The Seventh Circuit identified three categories that have emerged to describe the different types of "discrimination" that can support a Title VII claim. The first category of cases are those in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, such as occurs in a termination of employment. *Id.* at 744. Second are cases in which "a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted." *Id.* A variation of this occurs when an employee is not actually transferred, but his job is nonetheless "changed" in a way that "injures his career." *Id.* The harm involved in this scenario is a future financial harm rather than a present harm. *Id.* With the third type of case, the employee is not moved to a different job or the skill requirements of her present job are not altered, "but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment-an alteration that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Herrnreiter*, 315 F.3d at 744.

Viewing the evidence in the light most favorable to Brandenburg, the Court finds that they are questions of material fact as to whether she suffered adverse employment actions as to pa and promotion. First, there is contradictory evidence regarding the complaints of discrimination and the pay increase requests. Plaintiff

testified that she told Beatty that woman were not treated fairly.  She also testified that she told Mixon about the discrimination and that Mixon told her he would relay her concerns.  She also avers that she repeatedly tried to speak with Josh Kaburick about her concerns to no avail.  Defendants maintain that plaintiff did not request a specific amount of raise or express what she believed that she should have been paid.  Defendants also maintain that they were not aware that she made complaints about discrimination or that she was being treated in a discriminatory manner.  Further, defendants contend that she refused to meet with Mr. Kaburick prior to leaving on December 14, 2007.  The Court concludes that a reasonable person may find that all of the incidents combined constituted a hostile work environment and adverse employment actions.  *See also Nagle*, 554 F.3d at 1116 (categorizing recoverable adverse employment actions, including those that change a work environment to make it "humiliating ... or otherwise significantly negative").

Further, based on the record, the Court finds that there are questions of material fact as to whether Brandenburg was not promoted to Safety Director due to her gender.  While defendants maintain that the as of June 2007 the Safety Director position did not exist; that the position was never filled as the company made several personnel changes and that it was not aware plaintiff was interested in the job, there is sufficient evidence for the jury to find this may be pretext.  The record contains evidence that Brandenburg was interested in the Safety Director position, that she was never offered the job and that other employees asked her why she did not take the job. Further, the record reveals Brandenburg performed many of the duties of a

the Safety Director without pay. Thus, there are questions of material fact as to why the Safety Director position was not filled and why Brandenburg did not receive pay for the additional work.

Next, defendants argue that Brandenburg cannot point to a similarly situated employee. Plaintiff contends that Thompson was similarly situated.

To assess whether two employees are similarly situated, "a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors … to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.' " *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2008) (quoting *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). Nevertheless, substantial similarity is all that is required, rather than complete identity. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir.), cert. granted, 128 S.Ct. 30, 168 L.Ed.2d 807 (2007)).

Relevant factors include whether the employee and proffered comparable "'dealt with the same supervisor'" and were "'subject to the same standards.'" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)(quoting *Randue*, 219 F.3d at 617-18); *see also Lim v. Tr. of Ind. Univ.*, 297 F.3d 575, 581 (7th Cir.2002) (holding male professors granted tenure before implementation of higher publishing standards several years before female professor was a tenure

candidate were not similarly situated to female professor); *Snipes v. Ill. Dep't of Corr.,* 291 F.2d 460, 463 (7th Cir.2002) (holding district court did not abuse its discretion in concluding that plaintiff was not similarly situated to co-employees who had different supervisors than plaintiff). Commonality of supervisors is important because "[d]ifferent employment decisions, concerning different employees, made by different supervisors ... sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." *Snipes,* 291 F.3d at 463 (quotation omitted); *see also Radue,* 219 F.3d at 618 (explaining when "different decision-makers are involved, two decisions are rarely similarly situated in all respects"). Another relevant factor is whether the employee and proffered comparable held the same or equivalent positions at the time of the challenged employment decision. *See, e.g., Patterson,* 281 F.3d at 680 (holding plaintiff failed to show coworker was similarly situated where coworker "held an entirely different position in another division of the company"); *Hoffman Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 651 (7th Cir.2001) (deciding comparator was not similarly situated to plaintiff because they did not hold the same or equivalent positions at the time of the challenged employment decision); *cf. Johnson v.. Zema Sys. Corp.,* 170 F.3d 734, 743-44 (7th Cir.1999) (comparing plaintiff to only other employee in same level managerial position as plaintiff).

Here, the Court finds that are sufficient commonalities between Brandenburg and Thompson for a jury to conclude that they are similarly situated. As the record reveals, Thompson and plaintiff received their new duties in the new Safety and

Recruiting Department the same day and they both reported to the same supervisor, Beatty. Plaintiff asserts that Beatty told her that she was comparable to Thompson. Moreover, there are disputes of fact as to Brandenburg's supervisory capacity. While Kaburick contends that she had no supervisory capacity, Beatty in an email to plaintiff acknowledges her supervisory capacity. Thus, the Court cannot say that there are no genuine issues of fact concerning whether Thompson was similarly situated to Brandenburg.

Lastly, Defendants contend that the conditions of Brandenburg's employment were not so unbearable or hellish as required to establish constructive discharge. *Inter alia*, defendants maintain that the email plaintiff sent to Kaburick after she quit indicating that she would stay if she got a pay raise and the title of safety manger establishes the opposite.

Constructive discharge occurs when a plaintiff shows that she was forced to resign because her working conditions, from the standpoint of a reasonable employee, had become unbearable. *Fischer*, 519 F.3d at 408-09 (quoting *Equal Employment Opportunity Comm'n v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002)). Constructive discharge can take two different forms. *Id.* at 409. Under the first approach, the plaintiff must demonstrate a discriminatory work environment even more egregious than the high standard for a hostile work environment. *Id.* Under the second approach, when an employer acts in a manner that communicates to a reasonable employee that she will be terminated, and then the plaintiff resigns, the employer's conduct may amount to a constructive discharge.

*Id.* With the second approach, a constructive discharge also occurs if, based on the employer's actions, the handwriting was on the wall and the axe was about to fall. *Id.*

Here viewing the facts in the light most favorable to plaintiff, the Court finds that there are questions of fact as to the constructive discharge issue. Based on the evidence, the Court finds that there are disputed facts as to whether a reasonable employee could find that Henderson Trucking had an atmosphere that favored men over women in most aspects of employment. There is evidence to suggest that this attitude could be found at the highest management levels of the company. Based on the circumstances in this case, the Court finds that questions of material fact exists as to whether a reasonable person would find the conditions Brandenburg experienced were so unbearable that she was forced to quit. Thus, the Court denies defendants' motions for summary judgment on the constructive discharge claim.

Next, defendants maintain that plaintiff cannot establish her prima facie case of retaliation in that she did not participate in a statutorily protected activity as she did not complain about discrimination to her supervisors. Plaintiff counters that she did inform her supervisor, Beatty, the Human Resource director, Mixon and Mike Reagan about the discrimination she experience. Based on the record, the analysis and the findings *supra*, the Court finds that there are disputes of fact regarding Brandenburg's complaints about discriminatory practices. Thus, the Court denies defendants' motion on this issue as well.

Lastly, defendants Premium Enterprises and Premium Transportation raise the issue that there is no genuine issue of fact to dispute that neither of them were

Brandenburg's employer under Title VII. Brandenburg counters that defendants'
additional evidence simply demonstrates the existence of factual disputes for a jury
to decide.

In general, an employee can only bring a Title VII claim against the employee's
employer. *See* 42 U.S.C. § 2000e-2(a). Under Title VII, an employee is defined as "an
individual employed by an employer." 42 U.S.C. § 2000e(f). To determine whether
a plaintiff was an employee of the defendant employer, the Seventh Circuit employs
a five-factor test based on common-law principles of agency. *Hojnacki v.
Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) (citing *Alexander v. Rush N. Shore
Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1997)). The test requires courts to consider
the following factors: (1) the extent of the employer's control and supervision over the
worker; (2) the kind of occupation and nature of skill required; (3) which party has
responsibility for the costs of operation, such as the provision of equipment and
supplies and the maintenance of the workplace; (4) the source of payment and
benefits; and (5) the duration of the job. *Id.* at 550. Of the five factors, the extent of
control and supervision over the worker is considered the most significant when
determining employment status. *Id.*

The Seventh Circuit has held that multiple entities may be considered an
employee's "employer" for the purposes of Title VII liability. *Tamayo v. Blagojevich*,
526 F.3d at 1088 (citing *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001)) (noting
that "any of the Affiliates that possibly maintained an employment relationship with
Worth may be named as a defendant under Title VII")." The Seventh Circuit no

longer applies the "integrated enterprise" test in Title VII cases. Instead, the Seventh Circuit found three ways in which certain affiliated corporate entities can be considered proper Title VII defendants. *Worth*, 276 F.3d at 259. First, any of the entities that maintained an employment relationship with the plaintiff could be named as a defendant under Title VII. *Id*. (citation omitted). Second, any of the entities found to have forfeited its limited liability could be considered a proper Title VII defendant. *Id*. (citation omitted). The third way to find that affiliated corporate entities are proper Title VII defendants is when an entity is found to have succeeded its predecessors liability. *Id*. at 260 (citation omitted).

The Court previously addressed this issue in its June 2, 2010 Order (Doc. 88). In that Order denying summary judgment, the Court found "that there are material disputes of fact as to whether Brandenburg was employed by either of these Defendants." (Doc. P. 18). Specifically, the Court found:

> "Premium Transportation, in its position statement, admitted that it entered into a contract to provide Henderson with leased employees. Throughout that contract, the parties recognize that the employees were Premium Enterprises. Further, that contract states that Premium Enterprises will pay its employees' wages, provide all fringe benefits and have the sole and exclusive control over the hiring, firing and training of the employees that it furnishes. (Doc. 81-2, ps. 3). In addition, Brandenburg's W-2's from 2006 & 2007 identify her employer as Premium Enterprises. (Doc. 81-1, ps. 1-4). Premium Enterprises provided Brandenburg with her personnel records. (Doc. 81-1, p. 9). Employees Bill Beaty, Mike Thompson and Keith Kruckenburg were hired by Henderson (like Brandenburg) and were added to Premium Enterprises' payroll in September 2004 and were counted as leased employees from 2004 through 2007. (Doc. 81-5)."

(Doc. 88, pg. 18) Again, after considering Premium Enterprises and Premium

Transportation's additional evidence and argument on this issue, the Court finds the that disputes of fact still remain. These defendants have not submitted anything to change the Court's prior determination.

## V. Conclusion

Accordingly, the Court **DENIES** the parties' motions for summary judgment (Docs. 107; 115; and 117). Also, the Court **DENIES** Henderson Trucking's motion to strike (Doc. 129). Lastly, the Court **SETS** this matter for Final Pretrial Conference on Friday August 26, 2011 at 10:00 a.m. The parties shall contact Magistrate Judge Wilkerson's chambers if an additional settlement conference would be beneficial.

**IT IS SO ORDERED.**

Signed this 20th day of July, 2011.

David R. Herndon
2011.07.20
14:22:39 -05'00'

**Chief Judge**
**United States District Court**